Under advisement, next case is Jamison v. Klem. My name is Leo Lutella. I'm an assistant federal policy member in the Middle District of Pennsylvania. I'm a member of Jamison. I would like to highlight three points that we made in our brief, and they would be that first, the district judge in this case erred by rejecting factual findings that were made by the magistrate judge after the magistrate judge held an evidentiary hearing, and his findings were based on support from the record. We believe that the district judge improperly replaced those findings with findings that he made without the benefit. What findings are you talking about? Your Honor, specifically, the district judge in this case hinged his opinion on the factual finding that Mr. Jamison was aware of the statutory maximum, that the highest charge, he pled guilty basically to six separate charges, two counts of possession with intent of various other crimes. The highest penalty there was a 20-year max for possession with intent to distribute cocaine. The district court found that Mr. Jamison was aware of that penalty. Therefore, he understood the consequences of his plea. Now, that awareness, the district judge says, comes from a 44-question questionnaire that the appellant testified to, and he filled out in a few minutes in the back of the courtroom while another proceeding was going on. There was one question out of 44 questions that had to do with penalties, and the magistrate judge, and I made a quote from the magistrate judge's recommendation with regard to this specific finding. He says, with regard to question number 25, which is the only place in this entire record which references penalties, the magistrate judge says, the petitioner inserted a statement of his understanding of the charge of the maximum confinement of 20 years and the maximum fine, possibly indicating a lack of understanding of the various charges and potential penalties. The magistrate judge then outlines the other charges that he has, the other five charges, and says that the court's oral plea colloquy did not include reference to the potential penalties, and no reference was made to the petitioner's incomplete and incorrect written statement of his charges and potential penalties. So here the magistrate judge says, the magistrate judge reviews the record, the magistrate judge has the hearing, looks at this guy, makes his credibility assessments, and says that he has an, quote, incorrect and incomplete understanding of the potential penalties. Does that mean the five-year mandatory minimum sentence that he complains about? Well, I think the district judge and the magistrate judge agree that he never knew about the five-year mandatory. Is that the fact-finding that the magistrate made that the district court disagreed with? The district court, I think, agreed with the fact-finding with regard to the mandatory minimum. But the district court said, it doesn't matter if you didn't know about the mandatory minimum, as long as you knew about the maximum, and this guy knew about the maximum. But the magistrate judge's findings question whether he knew about the maximum. It's our position that a defendant should know if he's facing a mandatory minimum. What is the essence of your case here? Is it that your client was not informed of the five-year mandatory minimum that he had to serve? That is the major factor in one of several factors that we believe invalidate this guilty plea. But that's really the question. You're arguing that. Wasn't that the principle? It wasn't a five-year mandatory. He was required to serve a five-year mandatory that he was not told about? Exactly. I was just wondering, because you say that the district court ignored the magistrate's findings. I know the magistrate judge concluded that your client, Jameson, was unaware or was not told about the mandatory minimum. That's correct. Well, the district court felt otherwise. The district court conceded, I believe, that... I think what the district court said was it doesn't matter if you know the mandatory minimum. Does it matter because he was sentenced within 60-month range anyway? It mattered because the district court believed that he knew about the 20-year maximum. And he knew there was a mandatory minimum. It wasn't what it was, but he knew there was a mandatory minimum. Well, the magistrate judge finds that he was unaware of a mandatory minimum at all. Okay. Because with regard to that issue, in calling the case, the prosecutor... There was these two counts of possession with intent and then four others, possession of paraphernalia, reckless endangerment, possession of marijuana, and driving while suspended. In calling all of those cases at the same time, there's a brief reference that said, we're going to run these all concurrently and we'll be filing a mandatory on the drugs. And there's no further mention of that whatsoever. The magistrate judge finds specifically that that statement, either objectively or in the context of petitioners, of Jameson's plea hearing, certainly did not put him on notice. But we also look at the facts as they were developed in the state court, don't we? Yes, Your Honor. And in the state court, wasn't there a determination that he was aware that he was subject to a mandatory minimum of five years? No, Your Honor. I believe that the county court... Well, the county court opinion, as I understand the PCRA opinion, said that he may have been aware by that statement that we would be filing a mandatory. That some sort of... I think that... Did somebody finish that? Some sort of mandatory reply? Some sort of mandatory minimum, but he did not know... Five years. Was it? His lawyer testified at the PCRA hearing, but the lawyer did not. Going back to the state court, didn't the prosecutor file a statement setting forth that a mandatory minimum of five years would be sought? That was filed well after he entered his guilty plea. But before sentencing? And just prior to sentencing. All right. Now, just following it chronologically, could not then Mr. Jamieson have appeared at sentencing and said, wait a minute, I didn't know I had a five-year mandatory minimum. I'd like to withdraw my plea. I suppose he could have. We believe his testimony as the magistrate judge did. What occurred was he got the notice while he was at New York County Prison, was still under the impression that sentencing was up to the court. And then that literally, at his sentencing hearing, discovers this. Well, wait a minute. The document had been filed by the Commonwealth, setting forth a mandatory minimum before sentencing. Are you suggesting that Jamieson had no knowledge of that until he showed up in court for sentencing? I'm saying he didn't understand it. His lawyer agreed that he didn't see him explain that to him. And I think that compounding this problem were our two factors. Number one, the Commonwealth makes a binding plea offer, which he didn't accept. They make the offer of four to eight, which is a year below the mandatory minimum. And then at the sentencing hearing, the sentencing judge says specifically to Jamieson, he said, so there's no deals here, and you understand that sentencing is up to the court. Let me just follow up on that for a second. Could, at the time the plea was entered, could the court have told Jamieson what the mandatory minimum was going to be? I think the court could have said, you're going to have to serve five years mandatory minimum of the sentence that I ultimately imposed. I think what could have happened, because since the prosecutor... Yes, yes. You're saying you should have told him that. But the court didn't know because isn't that subject to a further investigation? Well, that's, as I understand it, it's up to the prosecutor has to file a notice. But they knew that by their opening statement. They said, we will be filing a mandatory. I think that it was incumbent on that trial judge to say, well, OK, what do you mean? Let this guy know. OK, if they file this mandatory, and this and this is met, you're looking at a five-year mandatory. And if this or this is met, you're looking at a three-year mandatory. The issue was there, but I don't think it was, the burden should have been on this defendant with, you know, a GED. In other words, the sentencing judge was not thorough enough in advising Jamieson. That is basically our contention is that under the Boykin case and the case decided after that, that saying that this guy had to know the consequences of his plea when he made it, and he didn't know the consequences, the most serious consequence being the five-year mandatory minimum. I cannot figure this out. What did he get on the homicide? Was it 10 years? 20 to 40. We have a legal issue we have to address, but what difference does it make? Well, if he's doing 20 to 40 years, no matter what happens in this case. Well, this is consecutive. Oh, it is consecutive. OK. That's 20 to 40. The initial deal was to run it concurrently. This is consecutive. Well, the initial deal was to run the charges concurrently with each other. OK. They were imposed consecutive to the homicide. Right. OK. But I think that there is… Hold on a second. Go ahead. In your brief, you didn't tell us anything about that 20-year or 25-year homicide sentence. Can't you see that it really distorts the whole picture for us in reviewing the case from the beginning? Why didn't you tell us about the 25-year sentence? I don't know, Your Honor. I'm sorry if I omitted. Actually, I should have. Actually, another reason is that when Mr. Jamieson had the charges that we're complaining of now were brought, he was actually in the midst of defending that homicide case. I think that's how this case sort of got put to the side. And that's what his testimony at the hearing before the magistrate was that, well, basically, I was dealing with a homicide, so my lawyer and I really didn't talk about this case all that much. And then it was shortly after the jury came back and found him guilty of the homicide that he came into court and pled guilty to all of these charges. So he knew at the time he pleaded guilty that he had already had a 25-year sentence? He didn't know that at the time he pled guilty, a jury came back, found him guilty of homicide, and he was awaiting sentence on the homicide when he pleaded guilty in this case. Mr. Attella, had there not been a mandatory minimum in this case, what would Jamieson's sentencing range have been? Well, it depends on what he pledged. He claims that he would not have pled guilty. He claims that if he knew that... Well, I think the question is, assume that he would have pled guilty to the same offenses and no mandatory minimum applied. I think his guidelines... Well, it's 60 months to 72 months. Those were his guidelines, yes. But he was sentenced to 60 months, which is the bottom of the range that he was exposed to on the basis of his plea anyway. As I understand... And this is like a harmless error type of argument. What is the prejudice, what is the manifest injustice if he was sentenced to the bottom of the guideline range that he was exposed to anyway? I don't know that we could look at it in retrospect. In a sense, it's what... I'm happy to consider it your way as well. What does he know when he's pleading guilty? And he doesn't know... And in addition to that, these guidelines, as I understand Pennsylvania sentencing, there's a standard range, there's a mitigated range, and the judge could, for whatever reasons, say family support or anything, go below those guidelines. But he could have gotten probation. He could have, but he couldn't because of this mandatory. So he wasn't even on the green to say, how about probation on this because... What specifically is the unreasonable application of state law? In this case, is that given all of the circumstances surrounding that guilty plea, including the fact that he was not advised of the mandatory minimum, including the fact that there was absolutely no mention of the plea policy with regard to any penalties, that there's confusion on the record with regard to whether he knew about the maximum. And there were two sort of affirmative misleading statements with regard to the applicability of a mandatory minimum that his plea was not knowing and voluntary. And that in finding that it was, that it was... Thank you. Thank you. Thank you. Good morning, Your Honor. Good morning. My name is Kathleen Doucette. I'm here for the... I'm a city district attorney for York County. I'm here for the affidavit. And our position is that he answered the plea agreement knowingly and voluntarily and intelligently. And he did so when he answered all the questions on the 14-page question, or 13-page colloquy. And he did that in his own handwriting. But where was he advised that he was looking at a five-year mandatory minimum? He was sent that documentation to the prison and he came to court that day with that documentation in hand. And that was before or after his guilty plea? That was after his guilty plea. But he was notified, as counsel stated, in the opening of the case when the attorney for the common law... You mean at the sentence? Excuse me? You mean at the sentence? No, at his plea. When he answered his plea. Yes. Well, he was told that there were... Right. The five-year. It was never... Just what he's asking about when did he know about the five-year. I'm sorry. I'd like to know that, too. He knew about the five-year when he was mailed the documentation and he received that at the prison. And that was prior to his sentence. But after he answered his guilty plea. But after. There is an issue about why he didn't withdraw it. But the issue here... We're focusing on whether or not... It was whether or not his guilty plea, the entrance of the plea was knowing, voluntary, and intelligent. Not whether or not he should have withdrawn. This is not a motion that arises in the context of the denial of a motion that withdraws a plea, but a challenge to the constitutionality of his plea. So the after received notice. I'm not sure how that reflects on whether or not his plea was voluntarily, knowingly, and intelligently entered. In your brief at page 13, you have a... You mentioned that appellee acknowledges the federal due process requirements set forth in Brady. That a defendant must be advised of the direct consequences of his plea. You then say, however, appellee contends that said requirement should not be expanded to demand state courts to specifically advise state court defendants of the potential applicability of a mandatory minimum with safeguards in place to ensure the voluntary nature of the plea. I found that a rather astonishing statement. You're suggesting that state courts are not to be required to tell the defendants they're looking at a mandatory minimum of a certain length? That the constitution doesn't... Well, two questions. Let's put aside whether the constitution requires it. That's our only inquiry, but just to pursue the line of argument. You're suggesting that a state judge should not have to tell a defendant who's pleading guilty that he or she faces a mandatory minimum of a certain number of years. Defendants shouldn't have to know that. I believe that the defendants should know that and... Well, why should they know that they're specifically facing a mandatory minimum of a certain number of years? Why should they know that? Well, he did know that, but he... Your Honor, I believe that the... Well, the time he pled guilty, you just said at the time he pled guilty he did not know that. There was a statement, we're going to pursue the mandatories. Something to that effect. Now, you've said that you do believe that a defendant... Maybe I misunderstood. But you believe that a defendant pleading guilty at the time of the plea should understand that specific mandatory minimum sentences that he or she is subjecting themselves to specific mandatory minimum sentences. And by specific, I mean the number of years that will apply pursuant to that guilty plea. You think that's something defendants should know when they plead guilty? Yes. Okay, why should they know that? Well, in this case... Just in general, just hypothetically, why should a defendant specifically know that a mandatory minimum of a certain number of years applies before he or she pleads guilty? Well, that would indicate whether he wants to go forward with the plea or whether he's like... Would make it... Would determine whether or not it's a knowing plea. Okay. And the Constitution requires that. Brady Boykin, they require that? They require that he knows the consequences of his plea. It doesn't specifically say that he knows that he's going to be a subject to a mandatory. There's the consequences. Matthew, I think you're contradicting yourself. I thought you said that it is important for a defendant pleading guilty to know the length of a mandatory minimum sentence that he or she faces. Isn't that actually one of the most important considerations in deciding whether to plead guilty or not? Yes. Also, the importance of the maximum penalty... Let me ask this. How many years have you been a prosecutor? I'm not asking this to mean you. I'm just curious. I want to try to make a point. How many years have you been a prosecutor? Four. In the four years you've been a prosecutor, how many cases are you familiar with where the defendant actually got the maximum sentence in a situation that did not require the maximum sentence to be imposed? None. I presided over state trials, including homicides, for 10 years. I'm not sure I ever remember imposing the maximum sentence. And it wasn't just because I was a lenient sentencer. Since I've come here, I can't remember ever seeing a case where a defendant got the maximum sentence in a situation where judges didn't have to apply their cases under 841 where you have to apply life, absent those situations where there's discretion. I don't remember a defendant ever getting the maximum. I say that to suggest, from the defendant's point of view and from the point of view of what makes a knowing involuntary plea, the mandatory minimum is far more important than the maximum because unless the defendant has jacked the ripper in disguise, the defendant's not going to get the maximum. It's just not going to... It's something that reporters put out there to terrify the public about what the defendant's going to get pursuant to his guilty plea. Defendants don't get the maximum, and they know they're not going to get the maximum. They are going to get the mandatory minimum. And I understand your reason for focusing on the maximum. Clearly, the defendant has to know the sentence that he is exposed to pursuant to the plea. But in reality, in terms of what makes a plea knowing involuntary, isn't the mandatory minimum far more important to a defendant's decision to plead guilty? Because that's certainty. Isn't that far more important than the hypothetical legal reality that the plea exposes the person to 20 years that the defendant is simply not going to get? And the defendant knows he's not going to. They're not that stupid. They know they're not going to get the maximum sentence. The judge knows inside the defendant where the maximum is. This defendant is almost certainly not going to get... It's not given up. You rarely see cases where a defendant gets the maximum. And if they do get the maximum, they normally have such a horrendous record where they're subject to all kinds of mandatory sentences anyhow. But you know, the Pennsylvania Sentencing Guidelines, and I love the Pennsylvania Sentencing Guidelines. They're much better than the federal guidelines. A judge who dots I's and crosses T's in Pennsylvania, a state judge, can basically impose any sentence that he or she wants to, as long as you can substantiate it on the record. And it's not hard to substantiate it on the record. A couple of well-thought-out sentences, and you can sentence a defendant to anything, and you can survive appellate scrutiny. The fact that it's a five-year floor in the Pennsylvania Guidelines really doesn't mean a great deal. It would be very easy for this defendant to get probation. I don't know his background, but I bet I could sit up here now and theorize with you what a judge could put on the record to substantiate giving this defendant probation. Family support expresses remorse. A homicide is pending, that no more incarceration is necessary to protect the public or to embrace the impact upon the defendant the seriousness of his guilty conduct. By the time he's out on the homicide charge, we'll have a different defendant. There's no need to impose additional sanctions on this case. It would be very easy to impose a sentence of probation. Not a consecutive to the incarceration sentence and require clean urines for five years. That's a condition of probation. We really have more control over the individual and help them reintegrate into society. And I say all that, again, to suggest that the maximum here in the Guidelines don't really mean much. It's that mandatory minimum, it would seem to me, that would drive everything in this context. When the judge said four to eight with mandatory, did the judge have the wherewithal to be more specific and tell Jameson that in that four to eight range you must serve somewhere between blankety-blank and blank-blankety-blank mandatory minimum? I'm not sure if he did or not at that point. Well, let me put this another way. Could the judge have said, when I impose a sentence under our Guidelines and statutes, you will have to serve somewhere between three to five years minimum mandatory and that will be determined later. Could the judge have said something like that? So that Jameson would have factored in before entering a plea of guilty that I will be required to serve a certain amount of jail time at the time of sentence. Yes, the judge could have said that. Well, what does the four to eight mandatory mean? The mandatory here is five years, right? Did you have a question? Yes, I was a little bit confused. At one point you said the defense got documentation in prison and I wasn't sure whether that documentation, whatever it was, talked about the mandatory minimum. Did it? Yes, Your Honor, it did. It gave him... Did it say? It specified that the time, five years, and it specified the amount of the fine as well. It was... Pardon me, but what did it say? That he was subject to a mandatory minimum of five years plus a fine of $200,000. And he knew that before he pleaded guilty, or rather, before he was sentenced? He knew that before he was sentenced, Your Honor. He didn't know it before he pleaded guilty? No. He didn't have the specifics of the five years or the fine amount when he pled guilty. What is the four to eight mandatory? I can't make any sense out of that. I'm assuming, maybe I'm wrong, that the four to eight means that the government will redo a sentence or recommend a sentence of no less than four, no more than eight years under the Pennsylvania Indeterminate Sentencing Scheme. But if you say four to eight with mandatory, they can't recommend a four to eight with a five-year mandatory. So I just didn't understand it. His lawyer, who I guess had been the DA of York County, he didn't understand that. I don't understand. And it may be just a very cryptic, it was a handwritten note. It may be the assistant who wrote it. His handwriting was no better than mine, and so I can understand why he might have gotten confused. But I just don't understand what it means. It's a non sequitur. It can't be four to eight with mandatory. Because the four doesn't work. It's five to eight, but not four to eight. Well, that is true. Your Honor, when he clearly rejected that offer, and he was subject, and he knew he was subject to whatever the court was going to decide. Right, but that's exactly the problem, because he might have thought that he could talk the judge into giving him two years or three years or one year or probation. When the judge went over, he did inform him that there was no plea, there was no agreement. Right, and the sentence would be up to the court. And the sentence would be up to the court. And that was wrong, wasn't it? Because the sentence wouldn't be totally up to the court. The judge has got, he doesn't have the legal authority, or she doesn't have the legal authority, to impose a sentence below five years on the minimum. The front end of the sentence has to be at least five years. So when the judge says the sentence will be up to the court, that's a little bit misleading, because to the extent the sentence is up to the court, to the extent the judge gives a minimum of five years or more, but even that was misleading, because the defendant may well have been thinking, I gave up four to eight, because I think I can get this judge to give me a minimum of two years or three years or something, maybe even less than two years. And the judge is now telling the defendant the sentence will be up to the judge. So the defendant may well be thinking, when he pleads guilty, that he can make an argument. I guess this was one of the few defendants that you see in homicide cases with significant family support. You don't see that very often. Maybe in York County you do, but in Philadelphia County you don't. So he may have had reason to think that he's going to get less than four years, so why should he accept a plea for four years? Well, Your Honor, he wasn't given an opportunity to make a statement. He did not. He did not question. He did not ask. And he did not get sentencing. He did not say anything when the judge asked him if he had anything to say before he sentenced him. He didn't say, I don't understand the mandatory or anything. He frankly said nothing. Isn't that a judicial responsibility, though? Isn't it the judge's responsibility to completely inform a defendant of the nature and consequences of the plea and what the defendant can expect at sentencing? Yes, Your Honor. And I believe that the court, in saying that he had control over the consequences of the sentence, that the defendant understood that the judge could sentence to anything. But that's not true, is it? Well, it is true. I don't know if the judge has rejected the mandatory by finding that it wasn't complicable. How could he do that? I mean, it happens, and judges catch all kinds of criticism for it. But what in the record would suggest that the mandatory didn't apply here? I have nothing in the record that would suggest that it didn't apply. But if they had found something, then it would have been. So it would have been so easy for the judge. So the judge just kind of ignored the law, kind of winked at the prosecutor and said, I don't think the mandatory applies here, for whatever reason. No, if they had found something. But in this case, they didn't. So it didn't apply. Yeah. I have a question somewhat off the start. This case went without a brief in your office for six months. Why? I'm not sure, Your Honor. I was not the one handling the case at that time. When did you get assigned to this case? Last week, Your Honor. And they threw it around the grenade. I understand exactly what you're saying. I was upset, too, but it's not Miss Bassett's fault. They marched her in here today to be the fall person for somebody else. But do you have no reason then why Mr. Graff didn't take action on this case months before he did? I do not know, Your Honor. And I do not believe it was Attorney Graff who was supposed to be handling it at this point. As far as me in the office, I'm not sure why it wasn't allowed. And I apologize. Did the district attorney ever respond to why he didn't assign the case promptly to an assessment for a briefing? I'm not aware of that. All right. You're the fall guy. She is. You're going to have to take back the court sentiment and disapproval of the practice in your office. It shouldn't happen again. It shouldn't. If you could take that back, that would be helpful. And I'm somewhat empathetic to you because it wasn't your case and the problems that happened in getting the brief filed, you're not responsible for. In fact, a week ago when I saw, we received notice of the name of the attorney who would be appearing in court and I saw the name I hadn't seen before, your name, I realized that while somebody in York County is going to be ducking and dodging while Ms. Bissette comes in here and answers our questions, it's not really fair to you. But when you're only a prosecutor for four years, there's not a lot you can do about it. I understand that. Okay, thank you. Mr. Utsella? Your Honor, I may, very briefly, there's been a discussion again about the maximum. If I could just reiterate our position, or clarify our position with regard to the maximum, and I have to apologize, I don't think I addressed that sufficiently in my brief, is that the district court found that he was advised of the maximum and the district court also filed this law that as long as you know the maximum, everything's okay. We disagree with that legal conclusion. I think that the cases that the district court decided to support that have to do with collateral consequences and really aren't applicable here. But with regard to the factual finding, I should have been more clear in pointing out that that finding, that he knew the maximum and therefore everything's okay, is contrary to the mandatory minimum. Yeah, I tend to agree. It's not the maximum, it's the mandatory minimum. But what you are asking for is a decision that would say that whenever there is a mandatory minimum, the trial judge must tell the defendant at the time of the plea colicky the precise term that he or she faces, precise mandatory minimum term that he or she may face. I don't think that finding is, that holding is necessary in this particular case. We would love to see that finding. Why isn't it? What's under Brady and Brayton? What's wrong with that? That's a great holding. We would love to see that. Well, why do you look, why are you? But I don't think you have to go that far here because there's other things on the record that he didn't get. For example, he didn't, it's not a, yes, it was the maximum. And in all candor, the reason, the mandatory minimum is the most important element. Yeah, but what are we telling the trial judges, the judges that are sentencing defendants, what is it that you would like us to say that would be sufficient to allow for a meaningful and knowing plea? That when somebody pleads guilty, they have to have some idea as to what kind of penalties they're looking at. What do you mean by some idea? Didn't he have, didn't Jamison have some idea? No. I would like to say, you have to tell them that there's a mandatory minimum. You're such a forthright, able counsel. Why are you being such a weasel on this issue? I mean, you're just turning into a putty before my very eyes. Why don't you just say yes? The constitution requires that you have to know the mandatory minimum in order to, okay. Then why are you trying to duck around a yes answer? How far? How is that going very far to say that a defendant has to know the mandatory minimum? I think if you ask anyone on this, it just seems common sense that before you plead guilty, you should know that you're looking at a mandatory minimum. But what did the judges have to do? I mean, this case may end up providing guidance for judges that sentenced the defendants. Mr. Jamison, if you plead guilty, you're going to face at least five years in jail, up to 20. No, that wasn't hard. You have to serve at least five years. Yes. That's what would be sufficient in your eyes. Absolutely. I thought that's what I was asking you before. It was, but he was reluctant to take such a forthright stand. Oh. Constitution is one thing. I love that. You don't want to take the constitution too far here. Okay, Mr. Littrell, thank you very much. We understand your arguments. And just to say thank you very much for incurring our wrath. We'll take the matter under advisement.